UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lisa A. Biron,

               Plaintiff,                        Case No. 19-cv-57 (SRN/LIB)

    v.

                                    **REPORT AND RECOMMENDATION**

Hugh Hurwitz, et al.,

               Defendants.

      This matter came before the undersigned United States Magistrate Judge, pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss or for Summary Judgment. [Docket No. 37]. Following the establishment of a briefing schedule and the completion of briefing pursuant to that schedule, the Court took Defendants' Motion, [Docket No. 37], under advisement on the written submissions of the parties. (Order [Docket No. 46]).

      For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss or for Summary Judgment, [Docket No. 37], be **GRANTED**.

## I.    Background[1]

      According to the Presentence Investigation Report in Plaintiff's underlying criminal case, Plaintiff placed "advertisements on Craigslist.org which solicited men interested in 'partying' with an 18-year-old and 33-year old female." USA v. Biron, Case No. 1:12-cr-140 (PB),

---

[1] The facts contained in this "Background" section are derived from Plaintiff's Second Amended Complaint, [Docket No. 32-1], as well as, judicial records implicitly referenced in Plaintiff's Second Amended Complaint and matters of public record. Generally, in evaluating a complaint, materials outside the pleading cannot be considered on a motion to dismiss. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, exhibits attached to the pleadings, and matters of public record" such as judicial records. See, e.g., Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

Presentencing Investigation Report (D.N.H. May 21, 2013).[2] The two females described in the Craigslist piece were actually Plaintiff and her fourteen year old minor daughter. (Id.). Over the course of her advertising, Plaintiff had at least thirteen male individuals, ranging in age from sixteen years old to twenty-one years old, to her home, and those males individually engaged in sexual intercourse with either Plaintiff, her minor daughter, or both. (Id.). Plaintiff recorded her minor daughter engaging in sexual intercourse with at least one of the individuals in her home, and she also recorded her minor daughter having sexual intercourse with a nineteen year old male in a hotel in Canada. (Id.). Before Plaintiff took her minor daughter to Canada to engage in sexual intercourse with the nineteen year old individual, the three engaged in sexual behavior via Skype. (Id.).

On January 10, 2013, a jury convicted Plaintiff of one count of transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. §§ 2432(a) and 2427; six counts of sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a) and 2256; and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(1)(5)(B). USA v. Biron, Case No. 1:12-cr-140 (PB), Judgment in a Criminal Case (D.N.H. May 23, 2013). On May 23, 2013, Plaintiff was sentenced to a 480-month term of imprisonment to be followed by a lifetime term of supervised release. (Id.).

Plaintiff was initially imprisoned at the Federal Correctional Institution in Danbury, Connecticut. (Amended Compl., [Docket No. 32-1], at 1). Plaintiff does not allege that she had

---

[2] As previously noted, the Court "may consider the pleadings themselves, exhibits attached to the pleadings, and matters of public record" such as judicial records. See, e.g., Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079). Courts have determined that sentencing memoranda and presentencing investigation reports, such as the one discussed here, are judicial records. See, e.g., Vance v. Wilson, No. 6:10-cv-300 (HRW), 2011 WL 3794380, at *2 (E.D.Ky. Aug. 25, 2011) (citing United States v. Chang, 47 F. App'x 119, 122–23 (3rd Cir. 2002)). Thus, the Court considers the Presentencing Investigation Report from Plaintiff's underlying criminal case without converting the present motion to dismiss pursuant Rule 12(b) into one for summary judgement under Rule 56.

access to the Federal Bureau of Prisons' "TRULINCS email" system while she was incarcerated at FCI Danbury. (See, Id.).[3]

From April 2014, through January 2018, Plaintiff was imprisoned at the Federal Medical Center Carswell located in Fort Worth, Texas. (Id.). While incarcerated at the Federal Medical Center Carswell, Plaintiff alleges she had access to the Federal Bureau of Prisons' TRULINCS email system. (Id. at 10).

In January 2018, Plaintiff was transferred to the Federal Correction Institution in Waseca, Minnesota, where was incarcerated at the time she initiated the present action. (Amended Compl. [Docket No. 32-1]). After her transfer to FCI Waseca, Plaintiff requested access to the TRULINCS email systems; however, Defendants denied her request. (Id. at 2). Plaintiff alleges this denial was based on her classification as a "sex offender" with a "Walsh Assignment." (Id.).

On the basis of this denial of access to the TRULNCS email system, Plaintiff initiated the present case in the Third Judicial District, County of Waseca, State of Minnesota. (Notice of Removal [Docket No. 1]). On January 1, 2019, Defendants removed the present case to this Federal Court. (Id.).

With leave of this Court, Plaintiff's Second Amended Complaint was filed on June 28, 2019. (Order [Docket No. 36]). Plaintiff names as Defendants Hugh Hurwitz, the Acting Director of the Federal Bureau of Prisons; Nannette Barnes, the Warden of FCI Waseca; and

---

[3] The Trust Fund Limited Inmate Computer System (hereinafter "TRULINCS") is a computer system through which pre-approved inmates can send and receive electronic mail. (See, Program Statement 4500.12 (hereinafter "PS 4500.12"); Amended Compl., [Docket No 32-1], at 2–4) (discussing PS 4500.12 and describing TRULINCS system). TRULINCS allows an inmate to email with persons outside the prison who are listed on the inmate's electronic contact list. (Id.). TRULINCS email access is subject to individual approval, and each proposed contact must affirmatively consent to receiving said contact. (Id.). Bureau of Prisons (hereinafter "BOP") officials regulate and monitor TRULINCS usage, and inmates are not permitted access to the internet through the TRULINCS system. (Id.). If granted access to the TRULINCS email system, inmates may use their provided email address to access the TRULINCS "video visitation program" which allows inmates to visit with persons on the inmates approved contact list through an electronic video session. (Id.). Without access to the TRULINCS email systems, an inmate cannot participate in the video visitation program. (Id.).

Deanna Hiller, the Unit Manager Corrections Officer at FCI Waseca. (Second Amended Compl., [Docket No. 32-1], at 2). Each Defendant is sued <u>only</u> in their official capacity. (<u>Id.</u>).

Plaintiff's Amended Complaint does not allege any specifically delineated claims. (<u>See</u>, Second Amended Compl. [Docket No. 32-1]). Instead, throughout her Second Amended Complaint, Plaintiff asserts that Defendants' denial of her access to the TRULINCS email system violated the Religious Freedom Restoration Act (hereinafter the "RFRA"); Plaintiff's First Amendment right to free speech and free exercise of religion; and her Equal Protection Rights. (<u>See</u>, <u>Id.</u>).[4] As relief, Plaintiff seeks declaratory and injunctive relief. (<u>See</u>, <u>Id.</u> at 12).

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the non-moving party's "obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

---

[4] Defendants appear to interpret Plaintiff's Second Amended Complaint as raising separate claims as to the denial of Plaintiff's access to the TRULINCS email systems and the denial of her access to the TRULINCS video visitation system. A review of Plaintiff's Second Amended Complaint, however, finds that Plaintiff's claims are based solely on the denial of her access to the TRULINCS email system. (<u>See</u>, Second Amended Compl. [Docket No. 32-1]). Plaintiff discusses her inability to access the TRULINCS video visitation system simply as a consequence of her denial of access to the TRULINCS email system. (<u>See</u>, <u>Id.</u>). She cannot have access to video visitation without first having access to the TRULINCS email system. (<u>See</u>, <u>Id.</u>).

'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67).

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton, 611 F.3d at 454 (8th Cir. 2010) (citations and internal quotation marks omitted). In addition to accepting all of the factual allegations in the complaint as true, courts considering a Rule 12(b)(6) motion to dismiss must draw all reasonable inferences in the plaintiff's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton, 611 F.3d at 454 (citations omitted); see, Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

While the Court is required to construe the content within Plaintiff's pleadings liberally as she is proceeding *pro se*, Plaintiff is nevertheless bound by applicable procedural and substantive law. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

5

### III.    Defendants' Motion to Dismiss or for Summary Judgment. [Docket No. 37].

As discussed above, Plaintiff, throughout her Second Amended Complaint, asserts that by denying her access to the TRULINCS email system Defendants violated the Religious Freedom Restoration Act (hereinafter the "RFRA"); her First Amendment right to freedom of speech; her First Amendment right to free exercise of religion; and her Equal Protection rights. (See, Second Amended Compl. [Docket No. 32-1]).[5] Plaintiff raises these claims against the Defendants only in their official capacities, and she is seeking declaratory and injunctive relief. (See, Id.).

Defendants' Motion seeks dismissal of Plaintiff's Second Amended Complaint based on Defendants' contention that the Second Amended Complaint fails to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

In the alternative, if the Court finds the need to consider "factual materials" submitted by Defendants, then Defendants seek summary judgment on all of the claims raised in Plaintiff's Second Amended Complaint. The Court will not convert the present Motion to Dismiss into a motion for summary judgment. As noted above, the Court may consider certain factual materials from outside of Plaintiff's Second Amended Complaint, including judicial records from Plaintiff's underlying criminal case and Federal BOP TRULINCS Program Statement which Plaintiff references throughout her Second Amended Complaint. However, consideration of these materials does not require converting the present Motion to Dismiss under Rule 12(b)(6) into one for summary judgment under Rule 56. (See, fn. 1, 2, supra.).

---

[5] Plaintiff's Second Amended Complaint asserts these claims against employees of the Federal Bureau of Prisons, and therefore, it arises under Bivens v. Six Unknown Fed. Agents, 403 U.S. 388 (1971). Nevertheless, some of the cases to which the Court refers in the present Report and Recommendation involve claims arising under 42 U.S.C. § 1983, as alleged against state actors. This Court finds, as other Courts have, these 42 U.S.C. § 1983 cases involving particular constitutional rights to be persuasive, and applicable to, Bivens claims regarding the same constitutional rights, including claims of the type here raised by Plaintiff. See, e.g., Sanchez v. United States, 49 F.3d 1329, 1330 (8th Cir. 1995) (noting that the Eighth Circuit Court of Appeals "has referred to a Biven action as 'the federal law analogous to [42 U.S.C.] § 1983"); Christian v. Crawford, 907 F.2d 808, 810 (8th Cir. 1993) ("An action under Bivens is almost identical to an action under section 1983, except that the former is maintained against federal official while the latter is against state officials.").

### A.  First Amendment Exercise of Free Speech

Plaintiff alleges that "Defendants have barred [Plaintiff] . . . from using TRULINCS email in violation of . . . the First Amendment" because the "FBOP has, in essence, created a limited public form for its inmate population and those in the community wishing to correspond with them via its public messaging system." (Second Amended Compl., [Docket No. 32-1], at 2, 5). In her response to the present Motion, Plaintiff attempted to clarify that she was not alleging "that inmates have a First Amendment right to TRULINCS email"; rather, she purports to allege that "[i]namtes have a First Amendment right to communicate and correspond with others outside the prison," and "Defendants ban of [Plaintiff's] TRULINCS access impinge on her right to communication and correspond." (Plf.'s Mem., [Docket No. 47], at 2, n.1).

While prisoners maintain some First Amendment rights to communicate with the outside world, "the extent of inmates First Amendment right to communication with the outside world is a fact-intensive universe." Holloway v. Magness, 666 F.3d 1076, 1079 (8th Cir. 2012). Inmates are not constitutionally guaranteed access to a particular type of communication. See, Id.; Simpson v. Cty. of Cape Girardeau, Missouri, 879 F.3d 273, 281 (8th Cir. 2018) (upholding prison policy that allowed mail communication exclusively by postcard).

Plaintiff has failed to highlight, and this Court does not find, any Court which has held that inmates have a constitutional right to the use of email or the TRULINCS email system. In fact, it appears that every Court to have considered such a contention has squarely rejected the argument that inmates enjoy a constitutional right to email or the TRULINCS system. See, e.g., Edington v. Warden of FCI Elkton, No. 4:14-cv-2397, 2015 WL 1843240, at *3 (N.D. Ohio Apr. 22, 2015) (citing Bristow v. Amber, No. 2:12-cv-412, 2012 WL 1963577, at *2–3 (S.D. Ohio May 31, 2012) (prisoners do not have a First Amendment right to access email); Grayson v.

Federal Bureau of Prisons, 2012 WL 380426, at * 3 (N.D.W.Va. Feb. 6, 2012) ("[P]risoners have

no First Amendment constitutional right to access email."); Rueb v. Zavaras, 2011 WL 839320,

at *6 (D. Colo. Mar.7, 2011) ("Inmates do not have a First Amendment right to have access to

email"); Holloway v. Magness, No. 5:7-cv-88, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011)

("[A]ssuming that the free speech clause of the First Amendment requires prisons to permit

communication between prisoners and persons outside the prison, . . . the First Amendment [does

not require] that the government provide telephones, videoconferencing, email, or any of the

other marvelous forms of technology that allow instantaneous communication across

geographical distances; the First Amendment is a limit on the exercise of governmental power,

not a source of positive obligation . . . .")); Sebolt v. LaRiva, No. 2:15-cv-353, 2017 WL

2271441, at *3 (S.D. Ind. May 23, 2017) ("Other Courts that have considered inmates' claims

that their constitutional rights were violated by the denial of use of TRULINCS have been

rejected summarily."), aff'd sub nom. Sebolt v. Samuels, 749 F. App'x 458 (7th Cir. 2018), reh'g

denied (Feb. 20, 2019); Stratton v. Speanek, No. 14-cv-120, 2014 WL 6705394, at *3 (E.D. Ky.

Nov. 26, 2014) (citing cases and finding that use of the TRULINCS system is an institutional

privilege and not a constitutionally protected right); Hower v. Stewart, No. 17-cv-198, 2018 WL

4384150, at *8 (D. Md. Sept. 14, 2018) ("Inmates do not have a First Amendment right to access

email or TRULINCS."); Grayson v. Fed. Bureau of Prisons, 2012 WL 380426, at *3 (N.D.W.Va.

Feb. 6, 2012) (stating that prisoners do not have a First Amendment right to access email); Rueb

v. Zavaras, 2011 WL 839320, at *6 (D. Colo. Mar. 7, 2011); Bristow v. Amber, 2012 WL

1963577, at *2–3 (S.D. Ohio May 31, 2012).

 Even assuming solely for the sake of argument that Defendants denying Plaintiff access

to the TRULINCS email system is an infringement on Plaintiff's First Amendment right to free

speech, that infringement here is constitutionally permissive in nature. It is well established that "some [First Amendment] rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). Maintaining security, order, and discipline are essential goals of a corrections system, and prison officials, therefore, are accorded wide latitude in the adoption and application of prison policies and procedures. See, Bell v. Wolfish, 441 U.S. 520, 546–47 (1979). "[B]ecause 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, [courts] generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." Shaw, 532 U.S. at 229.

In Turner, the United States Supreme Court held that "when a prison regulation [or action] impinges on inmates; constitutional rights, the regulation [or action] is valid if it is reasonably related to legitimate penological interest." Turner v. Safley, 482 U.S. 78, 89 (1987). Turner established four factors that courts should consider in making that determination: (1) "whether there is a 'valid rational connection' between the prison regulation and the government interest justifying it"; (2) "whether there is an alternative means available to the prison inmates to exercise the right"; (3) "whether an accommodation would have 'a significant "ripple effect"' on the guards, other inmates, and prison resources"; and (4) "whether there is an alternative that fully accommodates the prisoner 'at de minimis cost to valid penological interests.'" Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 982–83 (8th Cir. 2004) (quoting Turner, 482 U.S. at 89–90). If a Court finds that the regulations or action satisfies the first Turner factor, then the Court balances the remaining three factors. Turner, 482 U.S. at 89–90.

TRULINCS email system PS 4500.12, and Defendants' present denial of Plaintiff's access to the TRULINCS email system pursuant to PS 4500.12, meets the Turner standard.

### 1. Valid Rational Connection

The first Turner factor requires that Defendants' regulation or action reflects a legitimate government objective, and "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justifying it." Turner, 482 U.S. at 89–90 (internal quotation marks omitted). "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." Id.

Defendants contend that the BOP prohibits certain inmates, including Plaintiff, from using the TRULINCS email system "to protect the public and reduce crime by prohibiting those like[ly] to engage in criminal activity through email" or computer use from using the system. (Defs.' Mem., [Docket No. 39], at 18). Defendants assert that to allow these inmates to use the TRULICS email system would divert BOP resources to monitoring the conduct of these inmates on the system. (Id. at 20).

According to TRULINCS Program Statement 4500.12 referenced in Plaintiff's Second Amended Complaint, "[a]n inmate's exclusion from participation must be based on his/her individual history or behavior," and "[i]nmates must not be excluded from participation based on general categorizations of previous conduct." (PS 4500.12 at ¶ 14.9(a)) (provided as Exhibit B [Docket No. 41-2]). TRULINCS Program Statement 4500.12 also provides that "[i]nmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of email, or jeopardizes the safety, security, [and] orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction." (Id.).

Plaintiff appears to acknowledge that Defendants' denial of her request to access the TRULINCS email system was based on her individualized history and behavior. (See, Second Amended Compl. [Docket No. 32-1]). Specifically, Plaintiff alleges this denial was based on her classification as a "sex offender" with a "Walsh Assignment." (Id. at 7, 9–11).

In the present case, the Court finds the relevant portions of PS 4500.12, and the restriction of Plaintiff's access to the TRULINCS email system pursuant to PS 4500.12, to be reasonably related to legitimate penological objectives. In the course of the conduct upon which her underlying criminal conviction is based, Plaintiff used a website to solicit men to have sexual intercourse with her and her minor daughter. USA v. Biron, Case No. 1:12-cr-140 (PB), Presentencing Investigation Report (D.N.H. May 21, 2013) (provided as Sealed Exhibit E [Docket No. 42]). Plaintiff communicated with these men through the use of her email account. Id.[6] Additionally, before Plaintiff took her minor daughter to Canada to engage in sexual intercourse with a nineteen year old individual, the three engaged in sexual behavior via Skype over the internet on a computer in Plaintiff's residence. Id.

This Court finds, as other Courts to consider the issue have done, that PS 4500.12's restrictions of access to email of certain individuals, under the circumstances of the present case, meets the first Turner requirement. See, e.g., Edington v. Warden of FCI Elkton, No. 4:14-cv-2397, 2015 WL 1843240, at *4 (N.D. Ohio Apr. 22, 2015); Hower v. Stewart, No. 17-cv-198, 2018 WL 4384150, at *8 (D. Md. Sept. 14, 2018); Teague v. True, No. 18-cv-00253, 2018 WL 4335668, at *3 (S.D. Ill. Sept. 11, 2018). There is a common sense connection between the goal of institutional security, inmate rehabilitation, and public safety, on the one hand, and on the

---

[6] Although plaintiff for the first time in her responsive memorandum asserts that the prosecuting attorneys in 2013, misrepresented the content of the emails, it is not the content of the emails that is relevant here. Rather, it is the fact that she used email communication in the furtherance of her criminal conduct. The Court need not address Plaintiff arguments as to the specific contents of the emails.

other hand, limiting access to email to those "[i]nmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of email, or jeopardizes the safety, security, [and] orderly operation of the correctional facility, or the protection of the public or staff." PS 4500.12, [Docket No. 42], at ¶ 14.9(a)(1).

The Eighth Circuit Court of Appeals has "recognized institutional security as the most compelling government interest in a prison setting," Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 983 (8th Cir. 2004), and it has likewise recognized "[r]ehabilitation is also a legitimate objective." Dawson v. Scurr, 986 F.2d 257, 261 (8th Cir. 1993) (citing Pell v. Procunier, 417 U.S. 817, 823 (1974)). The Eighth Circuit Court of Appeals has similarly recognized "public safety" as an "undisputed" legitimate government interest. Koscielski v. City of Minneapolis, 435 F.3d 898, 902 (8th Cir. 2006).

In the present case, Plaintiff was convicted of, among other things, one count of transportation of a minor with intent to engage in criminal sexual activity, as well as, six counts of sexual exploitation of children. During the course of conduct which resulted in her conviction in the underlying criminal case, Plaintiff used a computer video messaging service for her and her minor daughter to communicate with persons to whom Plaintiff would later introduce her daughter with intent to engage in criminal sexual activity. In one instance, Plaintiff utilized electronic communication to have her minor daughter engage in sexual behavior while video conferencing with an adult male. Similarly, Plaintiff used email communication with men whom she solicited to engage in the sexual exploitation of her minor daughter. Plaintiff's history plainly demonstrates a propensity to offend through not only the use of computers, but through the use of email specifically.

Plaintiff contends that the denial of access to the TRULINCS email system based on PS 4500.12 "serves no legitimate penological purpose because the FBOP has admitted that there is no way to abuse the email system." (Second Amended Compl., [Docket No. 32-1 ], at 9).[7] Nevertheless, this is not the test. The BOP's restriction on access to the TRULINCS email system, as provide in PS 4500.12, need not be based on some specific possible violation of the system itself, it only need be reasonably related to legitimate penological objectives.

Plaintiff also contends that even if she is granted access to TRULINCS email system, prison officials maintain the ability to monitor, preapprove, and regulate her contacts and communications. However, Turner does not require "actual proof that a legitimate interest will be furthered by the challenged policy. The connection between the two need only be objectively rational." Herlein v. Higgins, 172 F. 3d 1089, 1091 (8th Cir. 1999).

Thus, the relevant restrictions found in PS 4500.12, as well as, those restrictions as applied to Plaintiff satisfy the first requirement of the Turner test.

### 2. Alternative Means to Exercise Right

The second Turner factor asks, "whether there are alternative means of exercising the right that remains open to prison inmates." Turner, 482 U.S. at 90. If other avenues are available for the inmate to exercise the asserted right, "[C]ourts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." Id. (alteration in original) (internal citation omitted). "Alternatives to the type or amount of speech at issue need not be ideal . . . they need only be available." Holloway v.

---

[7] Plaintiff contends that Federal BOP "admitted there is no way to abuse the email system" when the previous Warden at FMC Carswell informed Plaintiff of the same in an email exchange between the Warden and Plaintiff. (Id. at 8). According to Plaintiff, the previous Warden at FMC Carswell wrote, "that it does not matter that there is no way [to] actually abuse or misuse the TRULINCS email . . . Certain inmates are expressly prohibited from email access due to the nature of their conviction." (Id. at 8) (underlining, ellipses, and alterations in Plaintiff's Second Amended Complaint).

<u>Magness</u>, 666 F.3d 1076, 1080 (8th Cir. 2012) (alteration in original) (quotation marks omitted) (quoting <u>Overton v. Bazzetta</u>, 539 U.S. 102, 135 (2003)).

In the present case, Plaintiff acknowledges in her Second Amended Complaint that she can communicate with persons outside the prison via regular mail and telephone. (<u>See</u>, Second Amended Complaint, [Docket No. 32-1], at 5–7) (discussing mailing letters and alleging that without access to the TRULINCS email system she "is limited to 300 minutes per month of costly telephone usage with is limited to 15 minute sessions"). Plaintiff asserts these avenues of communication do not represent alternative means because "[e]mail communication has become the primary means of communication in society today"; because "[t]he reliability of the U.S. Postal Service has declined drastically"; because certain law school professors, who use "email communication almost exclusively," wish to correspond with Plaintiff; because a pastor with whom she wishes to communicate "does not generally write letters by hand"; and because Plaintiff's "friends and family . . . do not handwrite letters and communicate almost exclusively electronically." (<u>Id.</u>).

Plaintiff's rationale is based on a misreading of the law. As noted above, the alternative to email corresponds need not be ideal; "they need only be available." <u>Holloway v. Magness</u>, 666 F.3d 1076, 1080 (8th Cir. 2012) (alteration in original) (quotation marks omitted) (quoting <u>Overton v. Bazzetta</u>, 539 U.S. 102, 135 (2003)). In the present case, Plaintiff has the means to correspond with persons outside the prison via regular mail and telephonic conversations. That Plaintiff subjectively perceives these alternatives as inconvenient or finds other avenues of communication personally preferable is immaterial to this Court's consideration of the <u>Turner</u> factors.

In Ortiz v. Fort Dodge Correctional Facility, a prisoner was not permitted to write or receive letters written in Spanish from family members who lived in the United States. Ortiz v. Fort Dodge Correctional Facility, 368 F.3d 1024, 1025–26 (8th Cir. 2004). The plaintiff there claimed that the policy violates his First Amendment rights. Id. The Eighth Circuit Court of Appeal disagreed holding that phone calls and the ability to receive visitors in person were adequate alternatives to writing and receiving letters from his family members. Id. at 1027.

In Simpson v. County of Cape Girardeau, Missouri, an inmate's mother challenged a prison policy which prevented written correspondence in or out of the prison facility in any form other than on a postcard limited in size; the policy also limited to ten the number of postcards an inmate could have in his room. Simpson v. County of Cape Girardeau, Missouri, 879 F.3d 273 (8th Cir. 2018). The inmates mother argued that the policy violated her First Amendment rights. Id. at 278. The Eighth Circuit Court of Appeals disagreed finding that because she was still able to visit him one day a week, receive collect calls from him, and mail him postcards her "ability to communicate with her son ha[d] not been completely foreclosed," and therefore, adequate alternative means existed for her to exercise her right. Id. at 280–81.

Like, in Ortiz and Simpson, Plaintiff's ability here to communicate with persons outside the prison has not been completely foreclosed. Plaintiff may still mail letters and may communicate telephonically. Thus, adequate alternative means to email exist for Plaintiff to exercise her asserted right to speech.

Therefore, the second Turner factor weighs in favor of finding that the relevant restrictions found in PS 4500.12, as well as, those restrictions as applied to Plaintiff satisfy the Turner test.

### 3. Ripple Effect

The third <u>Turner</u> factor considers what impact the "accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." <u>Turner</u>, 482 U.S. at 90. <u>Turner</u> instructs Court to "be particularly deferential to the informed discretion of corrections officials" if the "accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff." <u>Id.</u>

In challenging PS 4500.12, Plaintiff demands that the BOP give access to the TRULINCS email system to herself, as well as, <u>all</u> inmates denied access based on their "Walsh Assignment"; inmates "whose offense, conduct, or other personal history indicates a propensity to offend through the use of email"; and inmates "whose offense, conduct, or other personal history . . . jeopardizes the safety, security, [and] orderly operation of the correctional facility, or the protection of the public or staff." (PS 4500.12, [Docket No. 42], at ¶ 14.9(a)(1); <u>see</u>, Second Amended Compl. [Docket No. 32-1]).

On the face of Plaintiff's Second Amended Complaint, it is evident that accommodating Plaintiff's demand would cause a significant reallocation of the BOP's financial resources which would in turn interfere with the BOP's ability to maintain institutional security and inmate rehabilitation because increasing the number of persons using the system would increase the resource necessary to operate and monitor the system. (<u>See, e.g.</u>, Second Amended Complaint, [Docket 32-1], at 3) (discussing how all emails and system activity are being monitored and retained by authorized personnel; the BOP having the authority to reject individual emails; and emails being time delayed to allow monitoring staff to determine whether the email should be sent or received on an individual email by email basis); <u>see also</u>, <u>Teague v. True</u>, No. 18-cv-253, 2018 WL 4335668, at *3 (S.D. Ill. Sept. 11, 2018) (finding that allowing TRULINCS email

system access to an individual who was then excluded "would require additional prison resources to screen and monitor his use of email"). Because accommodating Plaintiff's sweeping demand would cause a significant reallocation or ripple effect concerning BOP resources, the Court is "particularly deferential" to the BOP's regulatory judgments. <u>Turner</u>, 482 U.S. at 90.

On this basis, the Court finds that the third <u>Turner</u> factor weighs in favor of finding that the relevant restrictions found in PS 4500.12, as well as, those restrictions as applied to Plaintiff satisfy the <u>Turner</u> test.

#### 4. Alternative Policies

The final <u>Turner</u> factor asks whether there are any ready alternatives to the policy at issue. <u>Turner</u>, 482 U.S. at 90–91. "Turner does not impose a least-restrictive-alternative test," rather it "asks . . . whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." <u>Overton v. Bazzetta</u>, 539 U.S. 126, 136 (2003) (citing <u>Turner</u>, 482 U.S. at 90–91). "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation." <u>Turner</u>, 482 U.S. at 90. Relative to the PR 4500.12 regulation at issue, Plaintiff has failed to suggest any alternative meeting this standard.

Rather than suggest any ready alternative, Plaintiff simply repeats her assertion that PS 4500.12 serves no legitimate penological interest. Plaintiff simply maintains that she, and other inmates like her, be granted access to the TRULINCS email system. This is not an "alternative," it is just another form of request for the breadth of relief she seeks in her Complaint. For the same reasons addressed above when discussing the third <u>Turner</u> factor, this "alternative" fails to accommodate the asserted right with only a de minimus cost to the penological interest.

Thus, the Court finds that the fourth <u>Turner</u> factor weighs in favor of finding that the relevant restrictions found in PS 4500.12, as well as, those restrictions as applied here to Plaintiff satisfy the <u>Turner</u> test.

Accordingly, because the Court finds that Plaintiff has no constitutional right to access email through the TRULINCS email system and because the relevant restrictions on the TRULINCS email system as found in PS 4500.12 are constitutionally permissive under the four factor test established by the United States Supreme Court in <u>Turner</u>, <u>supra</u>, the Court finds that Plaintiff has failed to plead facts upon which a reasonable inference could be based that Defendants violated Plaintiff's First Amendment right to free speech.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 37], seeks dismissal of Plaintiff's First Amendment freedom of speech claim, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 37], be **GRANTED**.

### B. First Amendment Free Exercise of Religion and Religious Freedom Restoration Act Claims

Plaintiff alleges that "Defendants have barred [Plaintiff] . . . from using TRULINCS email in violation of the Religious Freedom Restoration Act ("RFRA")" and "in violation of" the free exercise clause of "the First Amendment . . . of the United States Constitution" because "[w]ithout access to email, [the] practice of her Christian religion is severely restricted." (Second Amended Compl., [Docket No. 32-1], at 2, 6). Plaintiff contends that "[t]he complete ban on [her] access to email severely burdens the practice of her Christian faith and is not the least restrictive means of guarding against abuse of email." (<u>Id.</u> at 7).

The RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the

18

burden "is in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering" that interest. 42 U.S.C. § 2000bb-1.

"The free exercise clause of the [F]irst [A]mendment prohibits the government from unduly burdening the free exercise of religion. United States v. Slabaugh, 655 F. Supp. 462, 463 (D. Minn. 1987), aff'd, 852 F.2d 1081 (8th Cir. 1988). To successfully plead a violation of the First Amendment's free exercise clause, a plaintiff must first plead facts sufficient to demonstrate that a defendant "placed a substantial burden on [plaintiff's] ability to practice [her] religion." Pittman v. Jesson, No. 12–cv–1410 (SRN/TNL), 2014 WL 4954286, at *15 (D. Minn. Sept. 30, 2014) (quoting Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008)); see, Daywitt v. Minnesota, No. 14-cv-4526, 2015 WL 4094199, at *7 (D. Minn. July 6, 2015).

The Eighth Circuit Court of Appeals has explained that to plead a cause of action under either the RFRA or the First Amendment's free exercise clause an inmate-plaintiff must demonstrate "that the action substantially burdens" her ability to practice her religious beliefs. Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997); see, Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008); Cooper v. True, No. 16-cv-2900 (MJD/KMM), 2017 WL 6372609, at *5–6 (D. Minn. Nov. 2, 2017), report and recommendation adopted, 2017 WL 6372651 (D. Minn. Dec. 12, 2017). The Eighth Circuit has defined what constitutes a "substantial burden" as follows:

> In order to be considered a substantial burden, the government action must significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.

Weir, 114 F.3d at 820 (internal quotation marks omitted) (alternations in original). Pleading such a "substantial burden" is a threshold requirement. Weir, 114 F.3d at 820; Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008).

If an adequate alternative means exists for the inmate to "express adherence to [her] faith" and "engage in those activities that are fundamental to [her] religion," then there is no substantial burden on the inmate's ability to freely practice her religious beliefs. Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 833 (8th Cir. 2009) (citing Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008)); see, Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997); Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 983 (8th Cir. 2004).[8] It is "the inmate [who] bears the burden of establishing that the correction facility has placed a substantial burden on" her ability to practice her religious beliefs. Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 833 (8th Cir. 2009).

Plaintiff alleges her free exercise of religion is substantially burdened by her inability to send and receive emails because her faith dictates "it is necessary to communicate regularly" "in a back and forth dialogue" with her particular chosen pastor, who "does not generally write letters by hand"; "fellowship such as" can be found through "[s]everal other Christian ministries" which "provide spiritual advice and support to inmates solely via email"; and "discipling," through a "reciprocal" "fellowship relationship," with "other believers who are friends and family" but who "do not handwrite letters and communicate almost exclusively electronically." (Amended Compl., [Docket No. 32-1], at 6–7). Even accepting these allegations as true and

---

[8] Relying on Holt v. Hobbs, Plaintiff argues that having an alternative means of practicing her faith does not indicate she has failed to demonstrate a substantial burden on the exercise of her religious beliefs. (See, Plf.'s Mem., [Docket No. 47], at 12–13) (citing Holt v. Hobbs, 574 U.S. 352 (2015)). Plaintiff's reliance is misplaced. Holt involved a claim under the Religious Land Use and Institutionalized Persons Act, and the Holt Court specifically noted that the Religious Land Use and Institutionalized Persons Act provides "greater protection" than either the RFRA or the First Amendment's free exercise clause. See, Holt v. Hobbs, 574 U.S. 352, 361 (2015).

drawing all reasonable inferences thereon in Plaintiff's favor, Plaintiff has failed to plead facts demonstrating that her denial of access to the TRULINCS email system has "substantially burdened" her ability to practice her religion.

In essence, Plaintiff views the denial of her access to the TRULINCS email system as a substantial burden because she would personally prefer to communicate with other persons through email and those persons likewise prefer to communicate through email. "A prisoner need not," however, "be afforded [her] preferred means of practicing [her] religion as long as [she] is afforded sufficient means to do so." Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 983 (8th Cir. 2004); see, Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 833 (8th Cir. 2009); Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997); Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 812–15 (8th Cir. 2008).

Based on the allegations in her Second Amended Complaint, [Docket No. 32-1], Plaintiff remains free to communicate via United States mail or telephone with the persons discussed in her Second Amended Complaint. Plaintiff's mere desire to communicate with people through email, as opposed to through conventional mail sent through the United States Postal Service or via telephone, fails to demonstrate a substantial burden on her ability to practice her religious beliefs.

Plaintiff's conclusory assertions the United States Postal Service is becoming increasing less reliable falls well short of demonstrating that sending mail through the Postal Service is not a reasonable alternative to communicating with persons outside of a corrections facility. Although Plaintiff perceives sending mail through the Postal Service as failing to provide the same modern conveniences as Plaintiff perceives email to provide, the degree of convenience is simply not the test here. See, Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 812–15 (8th Cir.

2008); Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 983 (8th Cir. 2004); see, gen., Simpson v. Cty. of Cape Girardeau, Missouri, 879 F.3d 273, 281–84 (8th Cir. 2018) (citing Holloway v. Magness, 666 F.3d 1076, 1080 (8th Cir. 2012)).

Sending mail through the Postal Service or making a telephone call remain alternatives for Plaintiff to communicate with persons outside the correctional institution as Plaintiff deems necessary to discuss, and therefore practice, her religious beliefs. Plaintiff retains these alternative means to communicate with persons outside the correctional facility as she remains free to communicate with persons via telephone for "300 minutes per month" which she is allotted, or even, via in person visitation. See, in accord, Simpson v. Cty. of Cape Girardeau, Missouri, 879 F.3d 273, 281–84 (8th Cir. 2018) (upholding prison policy that allowed mail communication exclusively by postcard, and finding phone calls and in-person visits to be an adequate alternative).

Plaintiff has, therefore, failed to meet her burden of demonstrating that being denied access to the TRULINCS email systems is a "substantial burden" on her ability to practice her religious beliefs.

Similarly, Plaintiff's assertion that her ability to practice her religion is hindered because, absent her ability to communicate via email with the particular outside pastor she chooses, "[t]here are no . . . pastors at FCI Waseca that are of the same Christian denomination[,]"fails to demonstrate a substantial burden on Plaintiff's ability to practice her religion.

First, as already discussed above, Plaintiff remains free to communicate with persons outside the correctional institution, including with the particular pastor of her choosing, through the United States Postal Service, telephone conversations, and in person visitations.

Second, Plaintiff fails to allege how, why, or even the degree to which the "pastors at FCI Waseca" are not "of the same Christian denomination as" she. (See, Second Amended Compl. [Docket No. 32-1]). Plaintiff merely appears to allege that there is not a pastor of her liking at FCI Waseca. (See, Id.). "The Constitution does not, however, require that a religious advisor be provided for every sect in a penitentiary. Nor is a prisoner entitled to insist on a religious advisor whose beliefs are completely congruent with [her] own." Weir v. Nix, 114 F.3d 817, 820–21 (8th Cir. 1997) (citations omitted) (citing Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Blair-Bey v. Nix, 963 F.2d 162, 163–64) (8th Cir. 1992) cert. denied 506 U.S. 1007 (1992)). It is "[o]nly when a prisoner's sole opportunity for group worship arises under the guidance of someone whose beliefs are significantly different from [her] own is there a possibility that the prison's free exercise rights are substantially burdened in this manner." Weir v. Nix, 114 F.3d 817, 821 (8th Cir. 1997) (citing SapaNajin v. Gunter, 857 F.2d 463, 464 (8th Cir. 1998)).

In the present case, Plaintiff fails to present any allegations regarding how the religious beliefs of the religious advisors at FCI Waseca are "significantly different from" her own. Thus, here too, Plaintiff has failed to meet her burden of demonstrating that her being denied access to the TRULINCS email systems is a substantial burden on her ability to practice her religious beliefs.

Accordingly, because the Court finds that Plaintiff has failed to plead facts upon which a reasonable inference could be drawn that denying her access to the TRULINCS email system is a substantial burden on her ability to practice her religious beliefs, the Court finds that Plaintiff has failed to plead facts upon which a reasonable inference could be based that Defendants violated either the Religious Freedom Restoration Act or the First Amendment's free exercise clause.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 37], seeks dismissal of Plaintiff's First Amendment free exercise clause claim and her RFRA claim, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 37], be **GRANTED**.

### C.  Equal Protection Rights

Lastly, Plaintiff alleges that "Defendants have barred" her "from using TRULINCS email . . . in violation of [the] [E]qual [P]rotection" Clause of the United States Constitution. (Second Amended Compl., [Docket No. 32-1], at 2).

"The Equal Protection Clause requires the government treat all similarly situated people alike." Creason v. City of Washington, 435 F.3d 820, 823 (8th Cir. 2006) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). In the prison context, "[t]he heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing Timm v. Gunter, 917 F.2d 1093, 1103 (8th Cir. 1990), cert. denied, 501 U.S. 1209 (1991)). "To state an equal protection claim, [a plaintiff] must have established that [she] was treated differently from others similarly situated to [her]." Johnson v. City of Minneapolis, 152 F.3d 859, 862 (8th Cir. 1998); see, Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008).

"Dissimilar treatment of dissimilarly situated persons does not violate equal protection." Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) (citing Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp., 21 F.3d 237, 242 (8th Cir. 1994)). "Absent a threshold showing that she is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim." Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994). Accordingly, "the first step in" evaluating "an equal protection [claim] is determining

whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." Id.

If a plaintiff does not to allege sufficient facts to demonstrate she is a member of a similarly situated group who received disparate treatment, her Equal Protection claim fails, and the Court need not address the remainder of the merits of such a claim. See, Id. "The similarly situated inquiry focuses on whether the plaintiff[ is] similarly situated to another" person or "group for purposes of the challenged government action." Id. (citing More v. Farrier, 984 F.2d 269, 271 (8th Cir. 1993), cert. denied, 510 U.S. 819 (1993)).

Although there is no reference to a "class-of-one equal protection claim" in her Second Amended Complaint, in her memorandum in response to the present Motion, Plaintiff conclusorily asserts she has "stated a legally sufficient class-of-one equal protection claim." (Plf.'s Mem., [Docket No. 47], at 10). "A class-of-one claim is stated when a plaintiff alleges that a defendant intentionally treated [her] differently from others who are similarly situated and that no rational basis existed for the difference in treatment." Mathers v. Wright, 636 F.3d 396, 399 (8th Cir.2011). Like other Equal Protection claims, the threshold inquiry in a class-of-one Equal Protection claim is whether the plaintiff is "similarly situated to others who allegedly received preferential treatment." Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015) (quoting Domina v. Van Pelt, 235 F.3d 1091, 1099 (8th Cir. 2000)). Absent such a threshold showing, a plaintiff does "not have a viable equal protection claim." Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015) (quoting Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015) (quoting Reget v. City

of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010); Bills v. Dahm, 32 F.3d 333, 335 (8th Cir.1994) (explaining equal protection comparators must be similarly situated "in all relevant respects")).

On the record now before the Court, Plaintiff has failed to allege facts demonstrating she is similarly situated to any other inmate or group of inmates who received more favorable treatment relative to TRULINCS access.

For example, Plaintiff alleges she "is similarly situated to other FBOP inmates with the same 'low/in' security classification who are housed in general population with the FBOP and who used a computer or email in their crimes and who are allowed access to TRULINCS email." (Second Amended Compl., [Docket No. 32-1], at 8). However, on the face of her Complaint, she alleges that the denial of her access to the TRULINCS email system was based, at least in large part, on her having a "Walsh Assignment" and being classified as a "sex offender." (See, Id.). Because Plaintiff alleges that the denial of her access to email was additionally based, at least in part, on her having a "Walsh Assignment" and being classified as a "sex offender," she simply cannot be similarly situated to a generalized group of inmates who, by Plaintiff's own description, have neither "Walsh Assignments" nor classifications as "sex offenders."

Plaintiff also appears to allege she is a member of a yet another similarly situated group; however, on the face of Plaintiff's Second Amended Complaint it appears that all of the described members of this second group received the same unfavorable TRULINCS treatment as Plaintiff. In asserting that "[t]he bar on some Walsh Assignment inmates' use of email while allowing other Walsh Assignment inmates to use email violates the Equal Protection Clause," (Second Amended Compl., [Docket No. 32-1], at 10), Plaintiff appears to allege that she is also similarly situated to certain inmates who do have "Walsh Assignments" and who are classified as "sex offenders." Plaintiff purports to demonstrate this by alleging the existence of "one Walsh

Assignment inmate" who the "FBOP continues to bar" from "us[ing] the TRULINCS email" despite the fact that said inmate's child pornography conviction did not involve a computer in any manner." (Id.). Plaintiff highlights another inmate whose "crimes involved the sending of a photo via her email account" but who is denied access despite the fact that "it is impos[s]ible to obtain or send a digital image via the FBOP's TRULINCS system." (Id.).

Even assuming solely for the sake of argument that Plaintiff is similarly situated to these two exemplar inmates, Plaintiff actually alleges that these two inmates received the same unfavorable TRULINCS access denial as Plaintiff. Allegations that Plaintiff is similarly situated to another inmate who received the same unfavorable treatment as she cannot be the basis for a "viable equal protection claim." See, Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) ("Absent a threshold showing that she is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim.").[9]

For the foregoing reasons, the undersigned finds that Plaintiff has failed to allege sufficient facts to demonstrate that she is similarly situated to any inmate who allegedly received favorable treatment, and therefore, plaintiff has failed to plead a viable equal protection claim upon which relief may be granted. See, e.g., Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994).

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 37], seeks dismissal of Plaintiff's Equal Protection claim, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 37], be **GRANTED**.

---

[9] Plaintiff also alleges she "is similarly situated to other FBOP inmates with Walsh Assignments (i.e., sex offenders) with 'low/in' security classifications who are housed in general population within the FBOP, who used a computer or email in their crimes, and who are allowed access to TRULINCS email," and that she has "a list of approximately 15 inmates that fit this description." (Second Amended Compl., [Docket No. 32-1], at 9) (emphasis added). The Court need not accept Plaintiff's conclusory allegation because, as discussed above, the only inmates for whom Plaintiff provides any specific factual allegations actually received the same unfavorable treatment as she received.

## IV.    Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss, [Docket No. 37], be **GRANTED**; and

2. The present action be **DISMISSED without prejudice**.

Dated: November 22, 2019                                   s/ Leo I. Brisbois
                                                           Hon. Leo I. Brisbois
                                                           United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).